```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION
```

**PAUL COOPER**                                               **PLAINTIFF**

      v.                    Civil No. 09-2039

**ARKANSAS STATE HIGHWAY AND
TRANSPORTATION DEPARTMENT;
BJ McALISTER, JERRY WILLIAMS
and GLEN CHAVERS**                                            **DEFENDANTS**

### O R D E R

Now on this 8th day of June 2010, comes on for consideration Defendants' **MOTION TO DISMISS SECOND AMENDED COMPLAINT** and brief in support (documents #25 and #26) and Plaintiff's responses and briefs thereto (documents #30, #31 and #32). The Court, being well and sufficiently advised, finds and orders as follows with respect to the same:

### Procedural Background

Presently before the Court is the third motion to dismiss filed by Defendant Arkansas State Highway and Transportation Department ("ASHTD") in this matter. The Court will begin with a review of the procedural background in this case:

1.   Plaintiff, Paul Cooper, commenced this action on April 9, 2009, asserting claims against ASHTD for employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), and the Arkansas Civil Rights Act of 1993, Arkansas Code Ann. § 16-123-101 *et seq.*  In addition

to full back pay, compensatory and other damages, Plaintiff sought a permanent injunction prohibiting ASHTD from engaging in the discriminatory policies and practices alleged in the complaint.

2.  On May 6, 2009, ASHTD filed its first motion to dismiss Plaintiff's complaint, wherein it asserted that Plaintiff had not properly identified the defendant in this matter. Plaintiff subsequently filed his Amended Complaint, which correctly named ASHTD as the defendant. Thus, the Court denied the first motion to dismiss as moot.

3.  On June 4, 2009, ASHTD filed its second motion to dismiss seeking dismissal of certain claims in the Amended Complaint for three reasons. First, ASHTD argued that Plaintiff's Title VII claim for racial discrimination, based on failure to promote, was barred because Plaintiff had failed to exhaust his administrative remedies on that issue. Second, ASHTD asserted that the Court was barred from exercising federal jurisdiction over Plaintiff's Arkansas Civil Rights Act claims under the Eleventh Amendment. Third, ASHTD asserted that Plaintiff's claim for injunctive relief was not proper under *Ex Parte Young*, 209 U.S. 123 (1908).

4.  On July 27, 2009, the Court granted Defendant's motion and dismissed Plaintiff's Arkansas Civil Rights Act claim and claim for injunctive relief. Further, the Court dismissed Plaintiff's Title VII race discrimination claim based on failure to promote. The case was ordered to proceed on Plaintiff's remaining claims.

5. On February 17, 2010, Plaintiff filed his Second Amended Complaint alleging the following four counts: (1) race discrimination and harassment in violation of Title VII; (2) retaliation for protected activity in violation of 42 U.S.C. § 2003; (3) violation of his due process rights; and (4) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*. Plaintiff seeks a permanent injunction, declaratory judgment, back pay, future pay, compensatory and punitive damages and an award of attorneys' fees. A jury trial is set for August 16, 2010.

6. In reviewing a motion to dismiss, the Court must take all well pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Katun Corp. v. Clarke,* 484 F.3d 972, 975 (8th Cir. 2007). Thus, the Court now turns to the factual allegations contained in Plaintiff's Second Amended Complaint, which the Court must accept as true for purposes of this motion.

## **FACTUAL ALLEGATIONS**

7. Plaintiff was employed in various capacities by ASHTD from 1995 until May 2008, when he was terminated. Plaintiff is African-American and alleges that he has a disability within the meaning of the Americans with Disabilities Act.

8. In December 1995, Plaintiff was working for ASHTD in Ozark and Paris, Arkansas, as the only African-American employee.

In April 2004, Plaintiff filed a Charge of Discrimination with the EEOC. Plaintiff was subsequently transferred from Paris to Clarksville, Arkansas, pursuant to a settlement agreement entered into between the parties.

9. Prior to his transfer to Clarksville, Plaintiff's "soon to be supervisor" announced to co-workers that Plaintiff was being transferred to Clarksville "and that he was a big black guy who hated white people" and that "he was a trouble maker and would not be here long." (Document #24, at ¶10).

10. During April 2004, on Plaintiff's first day at work on the job in Clarksville, Plaintiff's supervisor, separate Defendant Jerry Williams, told Plaintiff that he had been labeled "Adolph Hitler." (Document #24, at ¶11).

11. While working at Clarksville, one of Plaintiff's crew leaders recommended Plaintiff for a merit raise and Williams said that he could not approve the increase "because 'Little Rock' would get mad." (Document #24, at ¶12).

12. In or around March 2006, Williams told Plaintiff that the EEOC "was screwing the place up" and that within five years "minorities would be running the place." (Document #24, at ¶16). Williams also told Plaintiff that "a judge who sued a dry cleaner for $500,000 over damaged pants was 'black.'" (Document #24, at ¶16). Williams also began to demean Plaintiff by assigning him

jobs beneath his pay grade while assigning more-favored employees to Plaintiff's job duties.

13. In or around October 2006, Plaintiff applied for a crew leader job, but was denied the promotion despite high recommendations and superior experience.

14. After Plaintiff was transferred to Clarksville, he did not receive any merit raises or promotions, despite recommendations by his crew leader.

15. In November 2006, Plaintiff and other employees reported an alleged theft of property by another ASHTD employee. As a result, Plaintiff and these other employees were retaliated against and subjected to a hostile work environment, which included being reassigned to lesser-quality jobs.

16. In September 2007, Plaintiff was suffering from a stress-related illness and took two days of sick leave. When he returned to work, Plaintiff and other employees were reprimanded for using sick leave. "Immediately, crew leader and separate Defendant Glen Chavers told the other white crew members the reprimand did not apply to them indicating it was toward the Plaintiff and others for which he had cause for retribution." (Document #24, at ¶17).

17. In or around October 2007, Plaintiff reported to ASHTD superior B.J. McAlister that Williams was prejudiced and that he had made statements to others that Plaintiff "was trouble because he is black." (Document #24, at ¶18). Plaintiff also told

McAlister that he was depressed and had anxiety as a result of Williams' behavior. McAlister took no action in response to Plaintiff's complaint.

    18. From November 2007, to February 11, 2008, Plaintiff took medical leave to recover from his depression and anxiety. When Plaintiff returned to work, "supervisors advised certain crew members at Clarksville to have nothing to do with or say anything to Plaintiff." (Document #24, at ¶20).

    19. On March 24, 2008, Chavers "without justification or cause shoved Plaintiff in the chest while Plaintiff and another co-worker argued." (Document #24, at ¶20). Chavers subsequently found McAlister and the decision was made to suspend Plaintiff's employment. McAlister and Chavers confronted Plaintiff about his suspension, and Plaintiff complained about the shove. Chavers responded, "Fuck you, boy!" (Document #24, at ¶22). These words provoked Plaintiff who then hit Chavers and a fight ensued. Chavers and McAlister "jumped on Plaintiff, hit him repeatedly, tackled him and choked him. McAlister and Chavers used excessive force and violence on the Plaintiff which resulted in his personal injury." (Document #24, at ¶22). Plaintiff asserts that his supervisors intentionally provoked him so that they would have a reason to terminate him. Later that day, McAlister published a false report about the incident to officials at the ASHTD. On May 18, 2008, Plaintiff was fired. Neither McAlister nor Chavers were

terminated or disciplined in any way.  Chavers threatened other employees with physical violence and retribution if they talked about what had happened that morning.

20.  Plaintiff filed a Charge of Discrimination with the EEOC on August 13, 2008, and a Notice of Right to Sue letter was issued on February 17, 2009.

## LEGAL ANALYSIS

21.  Defendants assert several grounds for dismissal of the Second Amended Complaint.  The Court will address each of their arguments in turn.

### Whether Plaintiff's Claim for a Permanent Injunction is Proper–

22.  Defendants assert that Plaintiff's claim for injunctive relief is not proper under *Ex Parte Young*, 209 U.S. 123 (1908). Plaintiff admits this.  (*See* document #30, Response to Motion to Dismiss Second Amended Complaint, at ¶4).  Thus, Plaintiff's claim for a permanent injunction will be dismissed.

### Whether Plaintiff Can Assert Claims against Individual Defendants McAlister, Williams and Chavers under Title VII and/or the ADA–

23.  Defendants assert that supervisors and other employees cannot be held individually liable under Title VII or the ADA. Plaintiff admits this is true.  Thus, Plaintiffs claims under Title VII and the ADA against the individual defendants-- B.J. McAlister, Jerry Williams and Glen Chavers-- will be dismissed.

**Whether Plaintiff Has Exhausted His Administrative Remedies as to His Claims for Failure to Promote, Hostile Work Environment and Disparate Treatment–**

24. The third basis for dismissal relates to Defendants' assertion that Plaintiff cannot assert racial discrimination claims for failure to promote, hostile work environment or disparate treatment because he has not exhausted his administrative remedies as to those claims. Specifically, Defendants assert that, in his Charge of Discrimination, Plaintiff only asserted that he was retaliated against for filing an EEOC charge and terminated because of his race. Defendants say that Plaintiff did not include any allegations of race discrimination based on a failure to promote him, hostile work environment or disparate treatment. Thus, Defendants argue that Plaintiff's claims of race discrimination for failure to promote, hostile work environment and disparate treatment are time-barred for failure to timely file an EEOC charge.

25. The Court set out the law on this issue in its prior Order (document #14) granting Defendant's motion to dismiss Plaintiff's first Amended Complaint:

> A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). That is, a claimant must first timely file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(e); *Cottrill*, 443 F.3d at 634.
>
> The administrative charge must be "sufficiently precise to identify the parties, and to describe

-8-

> generally the action or practices complained of." 29 C.F.R. § 1601.12(b). If the EEOC gives the individual a right-to-sue letter following its investigation, the charge limits the scope of the subsequent civil action because "the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Cottrill*, 443 F.3d at 634 (*quoting Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 886 (8th Cir. 1998)). Permitting claims to be brought in court which are outside the scope of the underlying EEOC charge would "circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.*; *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000).

26. In the EEOC charge, Plaintiff states his claims as follows:

> I was employed in December 1995, as a Single Axle Truck Driver. I was promoted to Backhoe/Front End Loader Operator in 1997. In July 2003, I filed an EEOC charge (251-2003-02359) and I later filed in US District Court. On March 24, 2008, I was suspended without pay. On May 24, 2008, I received a letter dated May 19, 2008, stating that I was being terminated effective April 2, 2008.
>
> I was suspended without pay pending termination due to an altercation that I had with a white Team Leader and a white Assistant District Engineer. The white Assistant Engineer that I had the altercation with suspended me. I was told that my termination was due to the altercation. However, the two other white employees were not suspended or terminated.
>
> I believe that I was suspended and terminated because of my race, black and in retaliation for filing the previous EEOC charge in violation of Title VII of the Civil Rights Act of 1964, as amended.

27. The Court held in its prior Order (document #14)--

> The foregoing administrative charge makes no mention of any failure to promote Plaintiff. This conclusion is supported by the fact that, in the EEOC charge, Plaintiff states specifically that the dates of the alleged

discrimination were between March 24, 2008 (the date of Plaintiff's suspension) and May 24, 2008 (the date Plaintiff was notified of his termination). According to the complaint, the alleged failure to promote occurred in October 2006. This date is well before the date range cited in Plaintiff's EEOC charge. Additionally, although given the option of doing so, Plaintiff did not indicate that there was discrimination of an ongoing or continuing nature -- such as a continuing failure to promote him.

As it is evident that the claims set forth in Plaintiff's EEOC charge are for unlawful suspension and termination due to race, and retaliation for filing a prior EEOC charge, the relevant inquiry here becomes whether the failure to promote claim set forth in the complaint is like or reasonably related to Plaintiff's EEOC charges. *See Cottrill*, 443 F.3d at 634. While the Eighth Circuit does not require that subsequently-filed lawsuits mirror the underlying administrative charges, it does not permit the sweep of a complaint to go beyond "the scope of the EEOC investigation which could reasonably be expected to grow out of the charge." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 674 (8th Cir. 2006) (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 1999)). This is a case where the sweep of the complaint does just that.

Given the straightforward and limited allegations set forth in Plaintiff's EEOC charge, the Court finds that this charge would not lead the Commission to investigate whether Plaintiff was denied promotions during the course of his employment with Defendant due to his race. And, while the Court will "liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that 'there is a difference between liberally reading a claim which lacks specificity, and inventing, *ex nihilo*, a claim which simply was not made." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (quoting *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996)). Thus, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to this particular claim. Accordingly, Plaintiff's claim of failure to promote due to race should be dismissed.

28. Now before the Court is Defendants motion to dismiss Plaintiff's Second Amended Complaint. In response to Defendants'

motion, Plaintiff has submitted an 8-page letter addressed to the EEOC, which he claims supplemented his Charge of Discrimination and provided additional information to the EEOC regarding his claim. This letter includes detailed allegations regarding his failure to promote, hostile work environment and disparate treatment claims. Plaintiff has attached an unsigned copy of this letter to his Amended Response to Motion to Dismiss Second Amended Complaint (document #31-1), but Plaintiff does not state specifically that he sent the letter to the EEOC. This detailed narrative contains numerous factual allegations not contained in either his Charge of Discrimination or the Second Amended Complaint.

29. As set forth above, Plaintiff is only permitted to bring claims that are within the scope of his EEOC charge. For purposes of this inquiry, the Court must first define what constitutes Plaintiff's EEOC charge and, specifically, whether the 8-page letter should be included as part of Plaintiff's charge.

30. The EEOC regulations set out the requirements for a charge of discrimination. *See* 29 CFR § 1601.12. Under this regulation, a charge may be amended "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." 29 CFR § 1601.12(b). Such amendments related to the original charge "will relate back to the date the charge was first received." *Id.* Thus, the EEOC

regulations permit amendments to an original charge, like the letter at issue here.

31. Courts have held, however, that "[i]mplicit within the statutory scheme is the requirement that to amend a charge, the amendments to a charge must be sent to and received by the EEOC." *Sosa v. Guardian Indus. Prods.,* 2007 U.S. Dist. LEXIS 32597, at *9-10* (S.D. Tex. May 3, 2007). In *Sosa*, the Court held that it would not consider an amendment to an EEOC charge when there was no evidence that a signed amendment was ever filed with the EEOC or received by the EEOC. *Id.*, at *10-12.

32. In this case, although the Defendants have not addressed this issue, the Court is concerned about Plaintiff's belated revelation of his amendment to his EEOC charge. Plaintiff has not provided the Court with a signed copy of his letter. Plaintiff has not even stated that he "actually *filed* [his] amendment with the EEOC, or even that he deposited such in the U.S. mail. . . nor does Plaintiff exhibit any receipt or acknowledgment from the EEOC that such an amendment was received for filing." *Sosa*, at *12, n.1.

33. The Court finds that, absent some evidence that Plaintiff actually filed his 8-page letter with the EEOC, the Court will not consider an unsigned letter as proof of an amendment to his EEOC charge under 29 CFR § 1601.12. *See Sosa*, 2007 U.S. Dist. LEXIS 32597, at *12 (holding that court would not consider letter as amendment to the charge absent some proof that it was filed with

and received by the EEOC); *Broadus v. Aegis Comm. Group, Inc.,* 2002 U.S. Dist. LEXIS 11169, at *6 (N.D. Tex. June 21, 2002) (holding that there was no evidence that unsigned letters by plaintiff were ever received by the EEOC and therefor would not be considered "charges" under the EEOC regulations).

34. This Court has already determined the scope of Plaintiff's Charge of Discrimination and has held, for the reasons stated herein, that the charge only includes claims for race discrimination based on his suspension and termination and for retaliation for his prior EEOC charge.  Thus, because Plaintiff's claims for failure to promote, hostile work environment and disparate treatment are outside the scope of the EEOC charge, those claims must be dismissed.

**Whether Plaintiff Has Exhausted His Administrative Remedies as to His ADA Claim–**

35. Like Title VII, under the ADA, in order to recover, a plaintiff must first file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 12117(a); *see also Brant v. Principal Life & Disability Ins. Co.*, 6 Fed. Appx. 533, 535 (8th Cir. 2001) (holding that district court properly dismissed plaintiff's ADA claim for failing to file an EEOC charge before bringing suit).  Although he could have, Plaintiff did not check the box for "disability" as a basis on which he was discriminated against by Defendants. Further, Plaintiff's Charge of Discrimination does not contain any allegations relating to disability discrimination and, for the

reasons set forth above, the Court will not consider the allegations in Plaintiff's letter as part of his EEOC charge. Therefore, because Plaintiff did not file an EEOC charge alleging disability discrimination, his claim under the ADA must be dismissed.

**Whether Plaintiff has Stated a Procedural Due Process Violation–**

36. Plaintiff claims that he had a property and a liberty interest in his continued employment and that Defendants violated his due process rights when they terminated his employment and denied him workers compensation benefits.

37. "A public employee has a property interest in his continued employment when there are contractual or statutory limitations on the employer's ability to terminate an employee, such as a contractual right to be terminated only for cause." *Barnes v. City of Omaha,* 574 F.3d 1003, 1006 (8th Cir. 2009)(*quoting Bennett v. Watters*, 260 F.3d 925, 927 (8th Cir. 2001)). Plaintiff has not alleged any contractual or statutory basis on which he had a right to continued employment with the ASHTD and, moreover, the ASHTD has pointed out that, under its policies, Plaintiff was an at-will employee who could be terminated at any time with or without cause. (*See* document #26-1, Defendant's Motion to Dismiss Second Amended Compliant, Exhibit A). For this reason, Plaintiff had no property interest in his continued employment. No due process violation can exist when

plaintiff fails to establish that he had a legitimate claim to continued employment with the defendant. *See Barnes*, 574 F.3d at 1008.

    38. To establish a procedural due process claim against ASHTD for deprivation of a protected liberty interest in his public reputation, Plaintiff must demonstrate:

* an official made a defamatory statement that resulted in a stigma;
* the defamatory statement occurred during the course of terminating the employee;
* the defamatory statement was made public; and
* an alteration or extinguishment of a right or legal status.

*Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009).

    39. Plaintiff asserts that he was stigmatized by the fact that the Defendants called the police to the scene when he got into a fight with Chavers and McAlister while at work. Plaintiff admits that no criminal charges were filed against him. He says, however, that, after the fight, he filed for workers compensation and his claim was denied because of statements made by the ASHTD employees about the altercation. Plaintiff asserts that the denial of his workers compensation benefits is sufficient to establish that he has a valid due process claim.

40. The Court finds that Plaintiff has not made out a claim for a procedural due process violation of his liberty interest because:

* Plaintiff has not identified a "defamatory statement" that was made by any official that resulted in a stigma;
* even if a defamatory statement had occurred, Plaintiff alleges it occurred in connection with a workers compensation proceeding -- not during the course of his termination; and
* there is no evidence that any defamatory statement was made public -- rather the negative statements were allegedly made in connection with a workers compensation hearing.

41. Thus, the Court finds that Plaintiff has not identified any protected property or liberty interest and, therefore, cannot state a claim for a procedural due process violation.

**IT IS THEREFORE ORDERED** that Defendants' **MOTION TO DISMISS SECOND AMENDED COMPLAINT** (document #25) should be, and it hereby is, **GRANTED**.

Accordingly, the following claims are **dismissed**:

(1) Plaintiff's claim for injunctive relief;

(2) Plaintiff's claims against the individual defendants- BJ McAlister, Jerry Williams and Glen Chavers;

   (3)  Plaintiff's race discrimination claims based on failure to promote, hostile work environment and disparate treatment;

   (4) Plaintiff's due process violation claims; and

   (5) Plaintiff's disability discrimination claim under the ADA.

  This case shall proceed on Plaintiff's remaining claims.

   **IT IS SO ORDERED.**

            **/s/JIMM LARRY HENDREN**
            **JIMM LARRY HENDREN**
            **UNITED STATES DISTRICT JUDGE**